CARLOS CANCIO *et al.*, Plaintiffs-Appellants, v. THOMAS J. WHITE, Defendant-Appellee.

First District (1st Division)    No. 1—96—3489

Opinion filed June 8, 1998.—Rehearing denied August 12, 1998.

424

Michael R. Panter & Associates, of Chicago (Ken Klimczak, of counsel), for appellants.

Parillo, Weiss & O'Halloran, of Chicago (M. Kathleen McHugh, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Carlos and Patricia Cancio brought an action to recover damages allegedly caused by the negligence of defendant Thomas J. White while driving an automobile. On August 24, 1994, after a jury trial, the jury returned a verdict in favor of plaintiffs and judgment was entered on the verdict on August 29, 1994. On January 31, 1995, the trial court granted plaintiffs' motion for a new trial on the issue of damages only. On December 12, 1995, the case was tried a second time before a jury. The jury returned a verdict in favor of defendant and judgment was entered on the verdict on December 14, 1995. Plaintiffs

again filed a motion for a new trial, which was denied on September 3, 1996. Plaintiffs filed a timely notice of appeal and raise the following issues: (1) whether the trial court properly denied plaintiffs' proposed modified jury instruction; (2) whether the trial court properly allowed introduction of evidence that Carlos Cancio had arthritis; (3) whether defense counsel's questioning of Carlos Cancio regarding a conversation with his attorney was proper; (4) whether the trial court properly admitted photos of plaintiffs' vehicle; (5) whether defense counsel violated the trial court's order *in limine*; and (6) whether defense counsel's closing argument was proper.

On December 14, 1988, while Carlos Cancio was stopped at a stop sign, defendant's automobile struck Carlos Cancio's minivan in the left front. On November 20, 1990, Carlos Cancio filed a complaint which alleged that he suffered bodily injury as a result of the accident and that Patricia Cancio suffered loss of consortium.

A jury trial was held on August 24, 1994. At the trial, the only witnesses were Carlos and Patricia Cancio and Dr. John Shea, a neurosurgeon. Dr. Shea testified that Carlos Cancio suffered a herniated disk as a result of the accident. Plaintiffs submitted medical bills and testified to the effect of the injury on their lives. The jury found for plaintiffs on the issue of liability. It awarded Carlos Cancio $3,500 for his medical expenses; $2,100 for past and future pain and suffering; and $2,800 for past and future disability. It awarded Patricia Cancio $0 for both the value of her husband's services and the loss of his society.

Plaintiffs filed a posttrial motion seeking a new trial on the issue of damages. The trial court granted the motion and on December 12, 1995, the retrial on the issue of damages commenced. Once again, both Carlos and Patricia Cancio testified as to Carlos' neck injury. They also testified that Carlos had no prior neck problems. The testimony of Dr. Shea was presented by way of the same evidence deposition used in the first trial. Defendant testified as both an adverse witness and in defendant's case in chief. After closing arguments but before the verdict was rendered, plaintiffs moved for a mistrial. The motion was denied. The jury returned a verdict for defendant on December 14, 1995. Plaintiffs filed a motion for a new trial and it was denied. This appeal followed.

## A. PROOF OF INJURY AND PROXIMATE CAUSE

Plaintiffs' first contention is that the trial court erred in refusing to allow plaintiffs' proposed jury instruction and in requiring plaintiffs to prove both injury and proximate cause at the second trial.

## 1. Jury Instruction

During the December 1995 retrial, plaintiffs submitted the following jury instruction:

> "It has been determined that the Defendant is liable for any injury which may have proximately resulted from the occurrence. You need only decide what injuries to Plaintiff resulted from this occurrence and what amount of money will reasonably and fairly compensate the Plaintiff for those injuries."

This is a modified version of Illinois Pattern Jury Instructions, Civil, No. 23.01 (3d ed. 1995) (hereinafter IPI Civil 3d No. 23.01). The first sentence of the unmodified instruction reads as follows: "The defendant has admitted liability for any [injury][damages] which may have proximately resulted from the occurrence." IPI Civil 3d No. 23.01.

■ Plaintiffs did not cite any cases that hold that the refusal of the trial court to allow IPI Civil 3d No. 23.01 constitutes reversible error. Nevertheless, we conclude that in cases such as the one at bar, where the liability of the defendant has previously been determined and the plaintiff proposes the above modified version of IPI Civil 3d No. 23.01, it is error for the trial court to refuse the instruction.

## 2. Proof of Injury and Proximate Cause

Plaintiffs also argue that they should not have been required to relitigate the issues of injury and proximate cause and, in support of this argument, cite *Fisher v. Patel*, 93 Ill. App. 3d 694 (1981), and *Exchange National Bank v. Air Illinois, Inc.*, 167 Ill. App. 3d 1081, 1090 (1988). Neither case is directly on point. In *Fisher*, plaintiff brought suit to recover for injuries sustained when the car in which she was riding was struck from behind by defendant. *Fisher*, 93 Ill. App. 3d at 694. The jury was instructed that if it found from the evidence that plaintiff was not injured and/or that the conduct of defendant was not the proximate cause of plaintiff's injury, the verdict should be for the defendant by reflecting zero damages to the plaintiff. *Fisher*, 93 Ill. App. 3d at 696. The jury found defendant liable but awarded zero damages to plaintiff. *Fisher*, 93 Ill. App. 3d at 696. The issue before the appellate court was the propriety of the zero verdict jury instruction. The court found that since plaintiff's evidence was not inconsistent or contradictory, and proof of actual damages was corroborated by witnesses' testimony, the giving of a zero verdict instruction resulted in error that was substantially prejudicial and affected the outcome of the trial and, therefore, reversal was warranted. *Fisher*, 93 Ill. App. 3d at 697. The court also noted that, in all negligence actions, once defendant's liability is established, plaintiff must prove actual damages before he can recover. *Fisher*, 93 Ill. App. 3d at 697.

The only other case cited by plaintiffs, *Exchange National Bank v. Air Illinois, Inc.*, 167 Ill. App. 3d 1081 (1988), was a wrongful death action that arose from an airline crash. Judgment was entered for plaintiff's decedent and the airline appealed. *Exchange National Bank*, 167 Ill. App. 3d at 1085. One of the issues before the court was the propriety of a portion of a jury instruction which read that "[t]here is no issue as to the liability of the defendant for the damages." *Exchange National Bank*, 167 Ill. App. 3d at 1091. The defendant contended that this language misled the jury into believing defendant was responsible for the crash. *Exchange National Bank*, 167 Ill. App. 3d at 1091. The court found since the jury was instructed that the only issue before it was the amount of damages to award and since the instruction did not suggest that defendant admitted liability, it was not prejudicial. *Exchange National Bank*, 167 Ill. App. 3d at 1091.

■ Defendant relies on *Nicholl v. Scaletta*, 104 Ill. App. 3d 642 (1982), for the proposition that "the plaintiff still ha[s] the burden of proving causation, and the nature and extent of her alleged injuries, even though liability was established as a matter of law." *Nicholl*, 104 Ill. App. 3d at 649, citing *Jeffrey v. Chicago Transit Authority*, 37 Ill. App. 2d 327 (1962). We agree with defendant and, in addition, find that the case of *Robertson v. Smith*, 40 Ill. App. 3d 174 (1976), is also instructive. In *Robertson*, plaintiff filed an action arising out of an automobile accident. *Robertson*, 40 Ill. App. 3d at 175. At the outset of trial, defendant admitted liability but contested the issue of damages. The jury found no damages. On appeal, plaintiff argued "that the verdict of no damages cannot stand because defendant admitted liability at the outset of the trial." *Robertson*, 40 Ill. App. 3d at 177. Plaintiff argued that "defendant, by admitting liability, admitted proximate cause and injury because these are elements of negligence liability, and consequently some award, even if nominal, had to be given." *Robertson*, 40 Ill. App. 3d at 177. The court disagreed. The court noted that plaintiff's theory did find support in *Edwards v. Ely*, 317 Ill. App. 599 (1943), in which the court addressed an identical issue. In *Edwards*, defendant had admitted liability and disputed only the extent of damages. The jury awarded no damages. On appeal, the court made a distinction between legal injury, the invasion of a right, and physical injury. The court then held that at least nominal damages must be awarded even though defendant's admission of liability was the only proof of legal injury. *Edwards*, 317 Ill. App. 599.

However, *Edwards* was reexamined in *Jeffrey v. Chicago Transit Authority*, 37 Ill. App. 2d 327 (1962), in which the court specifically held that even if a defendant's liability is established, a plaintiff must prove actual damages before he can recover. *Jeffrey*, 37 Ill. App. 2d at 336. The court applied that rule to the facts of the case and held:

"[B]y his admission of liability defendant admitted that the accident resulted from his negligent operation of his vehicle, and that plaintiff was free from contributory negligence. The mere fact that the accident occurred as a result of defendant's negligence does not, in any way, establish that plaintiff sustained physical injuries. While plaintiff was relieved, under defendant's admission of liability, from proving defendant's negligence and her freedom from contributory negligence, she was required to establish damages occasioned by physical injury. The jury found that she had failed to do so, and having so found, the award of no damages was appropriate."

Accordingly, we find that while plaintiffs were not required to prove liability on the part of defendant, under *Jeffrey*, plaintiffs were nevertheless still required to prove actual damages before they could recover. As defendant notes, a jury cannot determine the nature, extent and duration of an alleged injury, without first assessing what, if any, injury the plaintiffs suffered as a result of the accident and the extent and duration of any alleged injury.

Therefore, we find that it was not error for the court to require plaintiffs to prove injury and proximate cause at the second trial.

## B. EVIDENCE OF ARTHRITIS

Plaintiffs' next contention is that the introduction of evidence that Carlos Cancio had arthritis was improper because there was no showing that it caused any of his problems.

Prior to trial, plaintiffs moved *in limine* to exclude evidence that Carlos Cancio had arthritis. That motion was denied. Plaintiffs' counsel took the evidence deposition of Dr. Shea, who has treated Carlos Cancio since 1990. During that testimony, Dr. Shea read from Carlos Cancio's MRI record and stated that the MRI record indicated "that the patient had a C6-C7 disk herniation on the left side and also had some degenerative changes of the C4 and C5 vertebrae." Dr. Shea also testified that Carlos Cancio "had pre-existing disk degeneration at C4-5 and *** also at C5-6. And this would be so-called cervical spondylosis, which is sort of an arthritis or natural aging of the spine at those two levels." Dr. Shea also testified that "some of the pressure on the disk was due to some preexisting arthritis."

Plaintiff relies on *Marut v. Costello*, 53 Ill. App. 2d 340 (1964), *Karsten v. McCray*, 157 Ill. App. 3d 1 (1987), and *Templeton v. Chicago & North Western Transportation Co.*, 257 Ill. App. 3d 42 (1993), in support of his argument that evidence relating to preexisting arthritis should not have been admitted. In response, defendant argues that these cases are easily distinguishable since none involves a preexisting

condition to the same part of the body. See, *e.g.*, *Karsten v. McCray*, 157 Ill App. 3d 1 (1987) (defendant's failure to introduce expert medical testimony establishing a nexus between the plaintiff's preexisting condition and her current condition required a new trial where her preexisting injury was neither related to the same part of the body nor similar to the injury complained of); *Templeton v. Chicago & North Western Transportation Co.*, 257 Ill. App. 3d 42 (1993) (new trial warranted when irrelevant matter may have confused the jury or influenced its view of relevant facts); *Marut v. Costello*, 53 Ill. App. 2d 340 (1964) (improper to allow evidence of previous injury to neck and shoulders without proof of nexus to current back injury).

It is defendant's contention that since the preexisting arthritis is in the same area of the body that Carlos Cancio claimed was injured as a result of the accident, the evidence is admissible. Defendant points this court to its decision in *Elberts v. Nussbaum Trucking, Inc.*, 97 Ill. App. 3d 381 (1981), in support of his argument. In *Elberts*, the plaintiff brought an action to recover for injuries that plaintiff sustained when her automobile collided with defendant's semitrailer truck. The jury awarded plaintiff $2,000 damages for personal injuries and plaintiff appealed seeking a new trial as to damages. *Elberts*, 97 Ill. App. 3d at 381. One of plaintiff's arguments on appeal was that the trial court erred in denying her motion *in limine* to exclude reference to a prior injury. *Elberts*, 97 Ill. App. 3d at 384. The court noted that during the hearing on the motion, plaintiff's counsel stated that the prior injury was in the same area of the back. For this reason, the court found that the trial court properly denied plaintiff's motion to exclude evidence of the prior injury. *Elberts*, 97 Ill. App. 3d at 384.

■ However, plaintiffs contend that even if there is an injury to the same part of the body, evidence of that injury is impermissible, unless there is a showing that there is a connection between the past and present injuries. Plaintiffs rely on the fifth district case of *Brown v. Baker*, 284 Ill. App. 3d 401 (1996). In *Brown*, the fifth district looked at the reasoning behind that "same part of the body rule" and stated the following:

> "This rule leaves room for curious results. For instance, a childhood knee injury (falling and bruising a knee) could arguably be admissible in the case of a later alleged knee injury, without any further showing of relevance or causation, even if the prior injury had completely healed and been symptom free for decades. *** Such a rule defies common sense. Obviously, evidence of the old injury is presented to imply to the jury that the old injury, and not the occurrence presently at issue, is responsible for the plaintiff's current complaints. Without the benefit of testimony regarding

causation in these instances, jury members are invited to speculate on a nexus between the past accident and the present injury." *Brown*, 284 Ill. App. 3d at 404-05.

The court then concluded by saying that "[i]f a prior injury has long since healed and has shown no recurring symptoms, a defendant should not be permitted to introduce evidence of the prior injury without establishing causation." *Brown v. Baker*, 284 Ill. App. 3d at 405. While the *Brown* case deals with a prior injury, we find that an analogy may be made to the case of a preexisting condition. We agree with plaintiffs and the fifth district and hold that absent competent and relevant evidence of a causal connection between the preexisting condition and the injury complained of, evidence of the preexisting condition is inadmissible.

In the instant case, Dr. Shea testified that Carlos Cancio suffered a herniated disc as a direct result of the accident. Dr. Shea testified that the MRI indicated some "encroachment due to degenerative change." In explaining what this means, Dr. Shea stated: "There is some pressure due to the fact that there was some arthritis of the disc at that level so that some of the encroachment or some of the pressure on the disc was due to some pre-existing arthritis." We do not feel this testimony constitutes competent evidence sufficient to show "more than a mere possibility that the preexisting condition is the cause of the injury." See *Karsten*, 157 Ill. App. 3d at 8. There must also be medical proof of a connection between the preexisting arthritis and the herniated disc. See *Karsten*, 157 Ill. App. 3d at 8. Moreover, Dr. Shea later testified that everyone has some degenerative changes in their bodies as they get older; however, he stated that Carlos Cancio's age does not change his opinion that the collision was a cause of the disk herniation.

Accordingly, we find that because defendant failed to establish the requisite direct causal connection between Carlos Cancio's preexisting arthritis and the herniated disc, evidence of the arthritis was inadmissible.

### C. QUESTIONING OF PLAINTIFF CARLOS REGARDING DISCUSSION WITH ATTORNEY

Plaintiffs' third contention is that defense counsel's cross-examination of Carlos Cancio regarding a conversation with his attorney was improper.

Prior to trial, the court specifically warned both attorneys about creating inferences during cross-examination that are not supported by evidence. During trial, Carlos Cancio testified that he was referred to Dr. Shea through a physician referral service. Doctor Shea's records

and testimony corroborated that testimony. Defendant offered no testimony of any connection between plaintiffs' counsel and Dr. Shea. Nevertheless, the following exchange occurred during cross-examination of Carlos Cancio:

"Q. You said at some point after Dr. Lewis or treating with Dr. Lewis, you decided that you wanted to see another doctor?

A. Right.

Q. And you called to make an appointment with another Doctor, Dr. Shea; is that correct?

A. Yes.

Q. Before you made that phone call for the referral, did you not call your attorney and ask about finding another doctor?

A. We talked about it. I asked him that this guy is not doing anything for me, and he says well maybe do whatever you want.

Q. Now Dr. Shea, as far as you know, is not an orthopedic surgeon; is that correct?

A. No.

MR. KLIMCZAK: I object to this judge."

Prior to closing argument, plaintiffs' counsel moved to exclude any argument or innuendo that there was some unethical connection between plaintiffs' counsel and Dr. Shea. The court agreed that there was no such evidence. Defense counsel assured both the court and counsel that he would only argue what was in evidence. Nevertheless, in closing argument, defense counsel furthered the inappropriate insinuation as follows:

"What happens next? More time goes by. Then he goes to Dr. Shea in October of 1990. That's almost two years after the accident. What happens before he goes to see Dr. Shea? He talks to his attorney. He makes a phone call."

Defense counsel went on to imply that Dr. Shea was plaintiffs' "hired gun":

"We all know what money will do as a motivating factor in swaying testimony one way or the other. What other interests exist in this case? Dr. Shea, he was being paid $500 for the first hour and then $250 thereafter."

Generally, improper argument or misconduct of counsel *can be* a sufficient basis to require a new trial. *Mykytiuk v. Stamm*, 196 Ill. App. 3d 928 (1990). It is improper to ask a question when counsel has no good-faith reason for asking that question. *People v. Nuccio*, 43 Ill. 2d 375 (1969). Defendant asserts that the question of who referred Carlos to Dr. Shea is relevant to the credibility of Dr. Shea's testimony and to the reasonableness of the treatment sought since Carlos did not see Dr. Shea for 22 months after the accident and also since Dr. Lewis, the doctor who did treat Carlos after the accident, did not testify. We

find this argument to be unpersuasive. Carlos testified that he saw Dr. Lewis but that he did not find Dr. Lewis' treatment to be effective and, therefore, he sought the treatment of another physician. Additionally, defendant's implication that by failing to call Dr. Lewis, Carlos is hiding exculpatory evidence is also improper. This court found similar comments to be reversible error in *Rutledge v. St. Anne's Hospital*, 230 Ill. App. 3d 786 (1992). In *Rutledge*, the attorney stated: "Has anyone come in here and said Dr. Detrana wasn't qualified? Where is Dr. Detrana? How come they didn't bring him in?" *Rutledge*, 230 Ill. App. 3d at 791.

Accordingly, we find that defense counsel's cross-examination and closing argument, which insinuated a connection between Carlos Cancio's attorney and Dr. Shea, was improper, unsupported by the evidence, highly prejudicial and deprived plaintiffs of a fair trial.

### D. INTRODUCTION OF PHOTOGRAPHS

Plaintiffs' fourth contention is that the introduction of the photos of plaintiffs' minivan was improper. Plaintiffs specifically argue that the evidence was irrelevant since liability was not in issue.

Photocopies of the original Polaroids of the plaintiffs' vehicle were admitted by the court in the second trial because the original Polaroids introduced at the first trial were missing from the court file at the commencement of the second trial.

The only case plaintiffs cite in support of their argument that the photos are inadmissible is *Bullard v. Barnes*, 102 Ill. 2d 505, 519 (1984). Plaintiffs cite this case for the proposition that "[s]ince liability was not in issue, the photos of [the] Cancios' minivan were irrelevant." However, *Bullard* does not support this contention. In *Bullard*, *the parents of decedent brought a wrongful death action against* defendant for the death of their son which resulted from an automobile accident. *Bullard*, 102 Ill. 2d at 509. The jury found in favor of plaintiff and defendant appealed. The appellate court reversed and remanded for a new trial. On appeal to the supreme court, the supreme court agreed with the appellate court's finding that the admission of evidence of defendant Barnes' passing maneuver or failure to stop after the collision constituted reversible error. The court noted that "[r]elevancy is established where a fact offered tends to prove a matter in controversy [citations] and in view of defendant's admission of liability, these matters were not in controversy." *Bullard*, 102 Ill. 2d at 519. This does not aid plaintiffs' argument. In *Bullard*, defendant admitted liability and there was no controversy as to who was at fault; therefore, evidence of his passing maneuver or failure to stop was not relevant. The evidence at issue in *Bullard* did not go to the nature

and extent of the plaintiff's injuries as it does in the instant case. The fact that liability was not at issue does not automatically render the photos of the minivan irrelevant.

Also at issue in *Bullard* was the admissibility of morgue photos of the decedent. The Illinois Supreme Court disagreed with defendants' arguments and the appellate court's decision that the morgue photographs of the decedent were inadmissible. *Bullard*, 102 Ill. 2d at 519. Defendants objected on appeal to admission of these photographs on the grounds that they did not aid the jury in determining the extent of decedent's pain and suffering, and that they inaccurately depicted his injuries. *Bullard*, 102 Ill. 2d at 519. The court found that "[i]f a photograph of a decedent has sufficient probative value it should be admitted in spite of the fact that it may be gruesome or inflammatory, and such a decision normally rests within the discretion of the trial court." The court held that, on retrial, the photos would be admissible. *Bullard*, 102 Ill. 2d at 519.

■ In the instant case, the photos of plaintiffs' vehicle were relevant to the nature and extent of plaintiffs' damages. They were relevant because they showed little or no damage, which is something the jury could consider in determining what, if any, injuries Carlos Cancio sustained as a result of the accident. Accordingly, we find that admission of the photos was proper.

### E. VIOLATION OF MOTION *IN LIMINE*

Plaintiffs' fifth contention is that defense counsel violated a motion *in limine* and that this is grounds for a new trial.

■ We begin by noting that violation of an order *in limine* may be grounds for a new trial. *Rutledge v. St. Anne's Hospital*, 230 Ill. App. 3d 786 (1992). Prior to trial, plaintiffs moved *in limine* to prevent defense counsel from introducing various evidence and making certain arguments. The trial court's order *in limine* provided that the parties must

> "refrain from making any direct or indirect mention, whatsoever at the Trial, before the Jury of the following matters ***
>
> 7. That Plaintiff has had similar accidents as the one in issue to show a likelihood of Plaintiff to have accidents;
>
> * * *
>
> 12. That Defendant's attorney not be allowed to argue in closing argument 'that the Plaintiff has asked for a greater amount of money than he actually expects to be awarded.' "

During closing, defense counsel argued:

> "According to Dr. Shea's testimony, he did a history that an accident occurred in December of 1989.

MR. KLIMCZAK: Objection to that.

THE COURT: Again, Counsel, you will have an opportunity to respond in a moment. Go ahead, Mr. Mulligan.

MR. MULLIGAN: This is all in evidence ***."

Despite the order *in limine* barring defense counsel from arguing that plaintiffs' counsel asked for a greater amount than he expected to be awarded, defense counsel also argued:

"Please don't go back there and say, well, he's asking for $60,000.00. Let's split it down the middle. You can't do that. You have to base your decision on the evidence presented. If you gave the plaintiff 10 percent of that $60,000—

MR. KLIMCZAK: Objection to that.

MR. MULLIGAN: I haven't said anything.

THE COURT: Well, be careful what you say.

MR. MULLIGAN: If you gave the Plaintiff 10 percent of $60,000, that would be—

MR. KLIMCZAK: I object to that, Judge.

MR. MULLIGAN: What?

THE COURT: Why don't you respond to that in your rebuttal."

We find that the reference to the December 1989 accident did not constitute a violation of the order *in limine*. With regard to the December 1989 accident, defense counsel was only barred from arguing that the fact that Carlos Cancio had a similar accident shows his likelihood of being in accidents. Defense counsel did not make that argument. Defense counsel's argument went to the credibility of Dr. Shea. Dr. Shea's report noted an accident in December 1989 and this evidence was not barred.

We do find, however, that defense counsel did violate the order *in limine* when he implied that plaintiffs were asking for more than they expected to be awarded. Although defense counsel never expressly stated as such and asserts that counsel was only arguing that the amount sought by the plaintiffs was not supported by the evidence, it is clear from the transcript that the improper insinuation was put before the jury.

Accordingly, we find that the violation of the order *in limine* is also grounds for a new trial.

## F. CLOSING ARGUMENT

Plaintiffs' final contention is that defense counsel's closing argument itself warrants reversal.

■ Plaintiffs point this court to the following argument made by defense counsel:

"Then he goes to see a Dr. Lewis. We don't have Dr. Lewis' testimony. What does Dr. Lewis do? All we know is what plaintiff

tells you Dr. Lewis did or didn't do. Wouldn't you like to hear Dr. Lewis' testimony?

    MR. KLIMCZAK: Objection to that.

    THE COURT: Sustained, Counsel. Move on.

    MR. MULLIGAN: There is no evidence whatsoever as to—from a medical care provider what—

    MR. KLIMCZAK: Objection. That's a mischaracterization of the evidence."

As we stated earlier, defense counsel's implication that, by failing to call Dr. Lewis, plaintiffs are hiding exculpatory evidence is improper. See *Rutledge*, 230 Ill. App. 3d 786. Accordingly, we find that this improper behavior, when combined with defense counsel's improper cross-examination of Carlos Cancio, was prejudicial and is sufficient in and of itself to warrant reversal.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial on the issue of damages.

Reversed and remanded.

GALLAGHER and O'MARA FROSSARD, JJ., concur.